## Richmond

Thurston Massie, Etc. v. Commonwealth of Virginia.

November 30, 1970.

Record No. 7380.

Present, All the Justices.

G. *Andrew Nea, Jr.* (*Wallerstein, Goode, Dobbins & Shuford*, on brief), for plaintiff in error.

*Robert L. Simpson, Jr.*, Assistant Attorney General (*Andrew P. Miller*, Attorney General, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Thurston Massie appeals from a judgment of the court below sentencing him to two years in the penitentiary for statutory burglary. The indictment charged that the defendant Massie, on December 15, 1967, did break and enter the office of Bradley's Sawmill in Amherst County, and did steal $15 therefrom.

T. Worth Bradley testified that his mill, located approximately 14 miles from Amherst, was burglarized sometime during the late fall or early winter of 1967. He said that entry to the building was effected by a breaking of the lock and in a manner which indicated to him that a bar about ¾″ wide had been used. He further testified that

located in the building or shed was a Dr. Pepper machine from which $10 to $15 and a number of soft drinks were taken, and that a first-aid change box was also missing which usually contained about $20.

The Bradley Sawmill had been burglarized twice during the year 1967, once in July and the second time in late fall or early winter. Mr. Bradley's testimony was directed to the details of the second burglary.

The record shows that during 1967 defendant was involved in and arrested for the commission of several offenses in Nelson County, Virginia. He was transferred from the Nelson jail to the jail in Amherst because of the inadequacy of the facilities in Nelson to care for both male and female prisoners.

Deputy Sheriff Thomas Foster, of Amherst County, testified that at the time defendant was first lodged in the Amherst jail he was being held for the Nelson County sheriff's office, and that there was no charge pending against him in Amherst. While in the Amherst jail Massie sent Foster a message by a fellow prisoner that he would like to talk to the officer. Pursuant to this request Massie was brought to the sheriff's office. Before Foster permitted Massie to talk to him he advised defendant of his constitutional rights.

Foster said that Massie wanted to be taken to the Nelson County jail where his girl friend was incarcerated, in order that he might talk to her. At that time, and during the course of his talk with the officer, Massie confessed his involvement in "the Bradley breakin". Foster had made no investigation of the second Bradley burglary and apparently had no knowledge of it. He testified that Massie's statement to him was as follows:

"We were coming out of Buena Vista and the car was about out of gas. Sandra, Linda and I saw some trucks at a shed. Linda was asleep. Sandra said, there's a Dr. Pepper machine inside. Why not get a tire tool and pry it open? You and Linda will never get married if you don't get some money. You could see the light of the drink machine through the shed window or the car lights may have shined on it in turning around. So I got the tire tool and pried the padlock off the door of the shed and found the key to the machine on top of the machine. Sandra got money from the Band-Aid box, while I was getting drinks out of the machine. And also got money from the change box. The approximate total amount

of money was from fifteen to twenty dollars. We put drinks and things in the car and went back to Sandidges."

While the sawmill was not identified in defendant's statement as "Bradley's Sawmill", Foster replied, in response to a question as to how he arrived at the conclusion that defendant was referring to Bradley's Sawmill: "I talked to him at great length about it, Judge; and if I'm not mistaken I believe he said it was Bradley's Sawmill, but I did not put it in the statement."

Subsequent to defendant's confession, Foster went to Bradley's Sawmill, talked to Bradley and determined there had in fact been a burglary; that money was taken from a first-aid box; that a Dr. Pepper machine was there from which money and drinks had been stolen; and that the place was broken into at the approximate time stated by Massie.

The only other witness was Emmett Sullivan, a deputy sheriff of Nelson County, who testified that the statements made by defendant to Deputy Sheriff Foster were also made to him.

Defendant questions the sufficiency of the evidence to sustain his conviction and the admissibility of his alleged confession in evidence.

Manifestly there could have been no conviction of defendant absent his confession. Counsel for defendant argues that the trial court erred in admitting into evidence the confession, relying upon *Miranda* v. *Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He says that the circumstances in this case were such as required the presence of counsel at the time of defendant's confession, and that there is no evidence that defendant knowingly and intelligently waived the right to have an attorney present at that time.

We disagree with defendant's contention for here we are dealing with a volunteered statement. In *Miranda* v. *Arizona, supra,* the court, referring to volunteered statements, said:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. *Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.* The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states

that he wishes to confess to a crime, *or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*" [Emphasis supplied.]   384 U. S. at 478, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726.

The statement by Massie to Foster was made at a time when he was being held for Nelson County authorities. He was not under arrest for any offense committed in Amherst and was not being held for interrogation there. The second burglary of the Bradley Sawmill was not then under investigation and Amherst officers had no knowledge of Massie's connection therewith until he volunteered a confession.

It was Massie who initiated the interview and who requested to speak to Deputy Sheriff Foster. It was during the course of his conversation with Foster that he volunteered his statements relative to the Bradley burglary.

There is nothing in the record to show, or even to suggest, that the confession by Massie was provoked, coerced or encouraged, or was in any way the result of any promises made to him by the police officers. It came freely and voluntarily. Foster was under no duty to stop Massie from making a statement, to refuse him the conference that Massie sought, or to deny him the right to confess his involvement in crimes committed in Amherst County.

We can surmise that Massie's desire to see or talk with his girl friend in the Nelson County jail may have prompted his confession and cooperation with the Amherst officers. Or it may be that Massie, facing numerous charges of other crimes in an adjoining county, desired to clear up all charges that were pending or might subsequently be brought against him. In either event the confession would not thereby be rendered inadmissible.

We hold that the statement made by Massie to Foster was a volunteered statement not barred by the Fifth Amendment, and that its admissibility is not affected by the holding of *Miranda*. See *Penn* v. *Commonwealth*, 210 Va. 242, 169 S. E. 2d 427 (1969).

Having concluded that the confession of defendant was admissible in evidence, we further find the evidence here sufficient to sustain his conviction.

It was established that a sawmill located in Amherst County, owned and operated by T. Worth Bradley and his brother, was burglarized twice during 1967. The two burglaries were effected in different

manners. The first knowledge that Deputy Sheriff Foster had of the second Bradley burglary was the statement volunteered by defendant. In this statement Massie recites his use of a tire tool to pry the padlock off the door of the shed and the manner in which he and his accomplices removed money and drinks from a Dr. Pepper drink machine and money from the first-aid box. The jury was justified in concluding that the burglary described by Massie was the same burglary that Mr. Bradley testified occurred at his sawmill during the late fall or early winter of 1967. Both Bradley and defendant referred to the building as a shed; identified the drink machine as a Dr. Pepper machine; described the manner in which the padlock on the door was pried open; referred to the presence of a first-aid or bandaid box; and testified to money being in that box as well as in the drink machine.

The details of the burglary given Foster by defendant were such as could only have been known and supplied by one who participated in its commission. The Commonwealth has carried the burden of establishing the corpus delicti and that defendant was responsible for the crime. The statement made by defendant to Foster was a full confession by the accused and is supported and corroborated by the testimony of Bradley.

A jury has found defendant guilty and their verdict has the approval of the trial court. Viewing the evidence in the light most favorable to the Commonwealth, and granting all reasonable inferences fairly deducible therefrom, we cannot say that the judgmen' is plainly wrong or without evidence to support it.

*Affirmed*